JOHN SOLINGER, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF OAK LAWN *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 61556

Opinion filed April 15, 1976.

Kozlowski and Smith, of Chicago (John A. Smith and Joseph J. Kozlowski, of counsel), for appellants.

Murphy, Boyle & Banks, of Chicago (Robert D. Boyle and Jay L. Statland, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, John Solinger, was discharged by the Board of Fire and Police Commissioners of the Village of Oak Lawn (hereinafter the Board) from his position as an officer of the Village of Oak Lawn Police Department for failure to inventory certain property which he recovered. Plaintiff filed a complaint for administrative review in the circuit court of Cook County. The trial court reversed the Board's order discharging plaintiff on the grounds that the latter was deprived of due process. On February 27, 1974, the Board filed a motion requesting that the trial court make findings of fact or state propositions of law. On December 5, 1974, the court entered an order finding that "the action of the Board was contrary to the right to due process and to other rights which are guaranteed to citizens of our United States under the constitution of these United States and the State of Illinois." The trial court specifically stated that the Board's order was not contrary to the manifest weight of the evidence, and plaintiff concedes the correctness of that ruling. Hence the sole issue on review is whether plaintiff was deprived of due process in his discharge from the police department. The facts giving rise to plaintiff's dismissal may be summarized as follows.

On September 16, 1971, a shipment of ski boots valued at about $900 was reported to the Oak Lawn Police Department as missing. An investigation revealed that plaintiff was connected with the subsequent sale of a number of the boots. He was summoned to the office of the chief of police for questioning. Upon being advised of his rights, plaintiff responded that he was fully aware of his rights. Captain George Kummer of the department was also present during the questioning. Kummer testified at the Board hearing that plaintiff had admitted to selling some ski boots. Plaintiff first informed his questioners that another officer and he had discovered the boots in a ditch while on duty. He subsequently altered that statement and told his superiors that he had found the boots in an alley near the ski shop from which they had disappeared. Plaintiff had not inventoried the boots which he found. At the hearing before the Board, plaintiff admitted that Kummer's testimony was true.

■■ ■ Plaintiff's first allegation of a deprivation of due process concerns the failure of the chief of police to advise him of his constitutional and statutory rights during the investigation. When the investigation indicated that a connection existed between plaintiff and the

missing boots, he was summoned to the office of the chief of police for questioning. After informing plaintiff of the purpose of the meeting, the chief began reading the standard *Miranda* warnings to plaintiff. Plaintiff interrupted the reading and stated that he was aware of his rights and answered questions without the aid of counsel.

We reject plaintiff's argument that he was not properly advised of his rights. Plaintiff effectively waived the necessity of a recitation of his rights when he volunteered that he was aware of them. This is particularly true in view of the fact that plaintiff at the time was a police officer who had been schooled in the rights of one being interrogated. Plaintiff, however, urges the applicability of section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1) requiring the investigator to provide, among other things, the accused's rights in writing and a transcript of the interrogation. While the Board points out that Oak Lawn is not governed by that provision, we believe that plaintiff's conduct waived any claim under the statute. Moreover, even if the statute applied in the present case, no constitutional deprivation has been shown. Due process basically requires that the officer "* * * be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." (*Pettigrew v. National Accounts Systems, Inc.* (1966), 67 Ill. App. 2d 344, 350, 213 N.E.2d 778; also see *Madigan v. Police Board* (1972), 8 Ill. App. 3d 366, 290 N.E.2d 665 (abstract opinion).) Plaintiff's right to due process was not violated during the investigation into this incident.

■■ The fundamental issue presented to this court is whether the Board afforded plaintiff a fair hearing. On March 9, 1972, the hearing commenced and six witnesses testified in support of the charges against plaintiff. After the Village rested its case, a conference was had by attorneys Robert D. Boyle, William Saracco and Eugene G. Callahan, all attorneys for plaintiff, attorney Ralph Rehnquist, prosecuting the matter for the Village, and attorney David Beran, legal advisor to the Board. After the conference, the latter two attorneys conferred with the Board. Thereafter, a second conference was held by all the attorneys, and it was agreed that plaintiff would be suspended for 30 days from the date of the Board's decision; and that plaintiff would concede the Village's case and present brief testimony in mitigation. Plaintiff presented two character witnesses and rested. On March 15, 1972, the Board published its decision discharging and removing petitioner. On April 7, 1972, plaintiff filed a petition for rehearing, attaching his attorneys' affidavits as to the negotiated settlement. The Board granted plaintiff's petition for rehearing, and set the matter for May 3. At the beginning of the rehearing, it was plainly stated that: "* * * this hearing * * * is one for the purpose of allowing the respondents who are the petitioners for the re-hearing, to

introduce any additional evidence which they did not present at the initial hearing." At the rehearing, plaintiff, however, presented no additional evidence, but rather his counsel argued the impropriety and inequity of the Board's failure to abide by the plea agreement. Plaintiff's counsel repeated that they believed that the Board had agreed that plaintiff would receive a 30-day suspension. It was Mr. Beran's recollection that the Board had not agreed to the suspension, and that he had suggested to one of plaintiff's counsel that "you better put on your case. They very well might give a suspension, but they have not agreed to this." Mr. Rehnquist, the Village prosecutor, addressed the Board as follows:

> "I believe that the statements made about the essentially—about the attempt of the agreement between the parties is correct. The basis for that agreement was the fact that there was some question in my mind and Mr. Beran's mind as to whether or not there were not some grounds for appeal, that would be upheld and on that basis, we, and after discussing this with the Board and I think we mentioned this to you, we felt that you were more or less in agreement."

Mr. Rehnquist also stated during the colloquy:

> "I think it was understood by all parties that we couldn't absolutely bind the Board to anything."

On May 18, 1972, the Board affirmed its decision discharging plaintiff from the police department.

A fair and impartial administrative hearing allowing both sides an adequate opportunity to present their cases is an essential prerequisite in complying with the requirements of due process. *Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722; *Lavin v. Civil Service Com.* (1974), 18 Ill. App. 3d 982, 310 N.E.2d 858.

In our judgment, the proceedings were fair and impartially conducted relating to all matters coming before the Board in this case. It is clear that a proposed disposition was reached among the five attorneys and that the disposition was discussed with the Board by the prosecutor and legal advisor. It is equally evident from the action of the Board itself in granting a rehearing, from the affidavits of plaintiff's counsel, and from the comments of the various counsel at the rehearing that an agreement with the Board had not been reached. Thus it appears that plaintiff's contention that a binding agreement had been reached is not established by the record.

■■ The evidence was overwhelming that plaintiff had violated police department regulations. The Board had the power of dismissal and rightly exercised that power. Plaintiff also was afforded an opportunity to present any additional evidence at the rehearing. If his rights in any way had been abrogated during the initial hearing, the situation was rectified

by the extraordinary opportunity of having a complete rehearing at which he could have introduced any additional evidence he wished. Plaintiff attacks the value of a rehearing by pointing out that in view of his admissions at the initial hearing any additional evidence would be contradictory to his prior testimony. We do not believe that under the circumstances of this case that contention reflects a deprivation of due process to plaintiff, but rather reveals his difficulty in presenting evidence contradictory to the Village's case.

■■ Plaintiff cites two cases, *Gigger v. Board of Fire & Police Commissioners* (1959), 23 Ill. App. 2d 433, 163 N.E.2d 541, and *Miller v. Board of Education* (1964), 51 Ill. App. 2d 20, 200 N.E.2d 838, in support of his contention that he was deprived of due process. Both cases are clearly distinguishable from the case before us. In *Gigger*, the court found that plaintiff had been deprived of a fair trial primarily because the administrative agency attempted to prove his guilt rather than ascertain the true facts. In that case, the Board's attorney conducted the hearing, presented, interrogated and cross-examined the witnesses, ruled on all questions of law and evidence, and decided whether a continuance would be granted. The *Gigger* opinion further relates substantial detail documenting the one-sided nature of the hearing. In *Miller*, the case was decided upon multiple grounds, primarily upon the Board's failure to comply with the notice requirements of the Teachers Tenure Act. In also ruling that plaintiff had been denied a fair hearing, the court pointed out numerous examples of how the Board's attorney controlled the hearing and the rulings therein to the detriment of plaintiff. In the present case, the Board was not being maneuvered by its attorney and at all times conducted itself impartially. It twice granted plaintiff the opportunity to present evidence, and utilized its attorney only as an advisor.

Upon a review of the record we find that the proceedings relating to the matter before the Board were fair and impartial. We do not believe that the plaintiff was deprived of constitutional rights, and we hold that the trial court erred in overruling the Board's decision.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the order of the Board dismissing plaintiff from the police department is reinstated.

Judgment reversed.

MEJDA, P. J., and DEMPSEY, J., concur.